```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
BASHEEN RUSH,                                                 :
                    Plaintiff,                                :
                                                              :
                                                              :     OPINION AND ORDER
v.                                                            :
                                                              :     15 CV 3103 (VB)
DR. L. MALIN, ANTHONY ANNUCCI,                                :
CHERYL MORRIS, N. CHEESEBORO,                                 :
MICHAEL CAPRA, JEFF MCKOY, T.                                 :
TRACZ, K. CROWLEY, HERNANDEZ,                                 :
IMAM HASAN A. MU'MIN,                                         :
                    Defendants.                               :
--------------------------------------------------------------x
```

Plaintiff, an inmate who identifies as Shiite Muslim currently incarcerated at Orleans Correctional Facility ("Orleans") brings this action pro se and in forma pauperis under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, and 42 U.S.C. § 1983, alleging that defendants have violated his rights to free exercise of his religion and equal protection during his incarceration at Sing Sing Correctional Facility ("Sing Sing") and Orleans.

Before the Court is plaintiff's motion for a preliminary injunction, filed on July 11, 2016. (Doc. #31).

For the reasons set forth below, plaintiff's motion is DENIED.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

### BACKGROUND

Plaintiff originally brought this action on April 15, 2015, alleging violations of his constitutional rights while he was incarcerated at Sing Sing. At the time he filed his complaint, however, he was already incarcerated at Orleans. (See Doc. #2).

Defendants answered the original complaint on March 21, 2016. (Doc. #25).

1

The Court held an initial conference on April 13, 2016, at which time plaintiff informed the Court he wished to amend the complaint to assert additional causes of action related to his incarceration at Orleans. The Court granted plaintiff's request, and plaintiff filed an amended complaint on June 29, 2016. (Doc. #30).

In his amended complaint, plaintiff alleges he has been denied "religious fundamental acts of worship, such as Ithna-Asheri Shi'a Islam Ju'mah services; religious events; 9 Days of Muharram; Day of Ashura; Eid ul Fitr prayer," and has been discriminated against based on his religion. (Doc. #30 at 3). Plaintiff sues ten individual defendants employed by the New York State Department of Corrections and Community Supervision ("DOCCS"), four of whom work at Sing Sing ("Sing Sing defendants"), two at Orleans ("Orleans defendants"), and four at the DOCCS administrative offices in Albany ("DOCCS defendants").

On July 11, 2016, plaintiff filed the instant motion for a preliminary injunction, seeking the following relief:

[A]n injunction against the defendants and order the defendants to show cause why the plaintiff should not be allow[ed]:

a. To conduct the last day of Muharram October 10, 2016 and the day of Ashura October 11, 2016 separate from the Sunni Muslims.

b. That the plaintiff and those wishing to attend the 9 days of Muharram (also known as Ashura) be released out at 3:30 pm or after the Count clear, for worship services, congregational prayer and reflection of Imam Husain (AS) and his Family killed and to conclude at 8:45pm. Providing them with Halal food, that shall be cook[ed] by a Shi'a Muslims. The Halal food shall be delivered to the activity building at sundown on or about October 2, 2016 to October 9, 2016.

c. Each adherent allowed fruits, nuts, and dates to break the fast. Allow the plaintiff to bring Prayer rugs and Qur'an. Allow the plaintiff will be [able] to wear his best clothing. (e.g. personal shirt, prayer robes.)

d. All food prepare for the event was be consumed by the plaintiff and the adherents wishing to attend.

    e.  On the 11-day of October 2016 the plaintiff and those, wishing to attend the Day of Ashura shall be allowed to be present in the activity building [no] later than 8:30 am and remain until 8:45pm.

    f.  At 11:00am, the plaintiff will return to his dorm for the count and allowed to return at 12:00pm, they shall be provided with refreshment, such as walnuts, coffee cake, coffee, tea, milk.  The plaintiff and adherents shall be allowed to have a day of reflection.

    g.  The plaintiff and adherents shall be allowed to offer in congregation the Dhur prayer (afternoon prayer at approx. 12:00pm), the As'r prayer (the late afternoon prayer at approx. 3:45pm), the Maghrib prayer (the evening prayer at sundown), and the Isha prayer (the night prayer at approx. 8:30pm).

    h.  At approx 5:00pm the Halal meal shall be brought to the activity building for the plaintiff and the adherents.

(Doc. #31 at 5-7).

## DISCUSSION

**I.**   <u>Venue</u>

Defendants argue plaintiffs' claims against the Orleans and DOCCS defendants should be severed and transferred to the United States District Courts for the Western or Northern Districts of New York.

The Court finds, at this phase of the case, severance and transfer is not appropriate.

Pursuant to 28 U.S.C. § 1391(b), "[a] civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located," or "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."

Venue is proper in this case because all defendants reside in the State of New York, and the Sing Sing defendants reside in this district.  Moreover, a substantial part of the allegations contained in the amended complaint arose at Sing Sing, which is located in this district.

3

Nevertheless, defendants argue joinder of the Orleans defendants in the amended complaint was improper and transfer of the case to another district is appropriate.

Federal Rule of Civil Procedure 20(a)(2) states that "[p]ersons . . . may be joined in one action as defendants if . . . any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action."

In determining whether allegations arise out of the same series of transactions or occurrences, "courts in this Circuit commonly ask whether a plaintiff asserts a claim against the joined defendant that is 'logically related' to the claims asserted against existing defendants." Springle v. City of New York, 2013 WL 592656, at *4 (S.D.N.Y. Feb. 14, 2013).[1] "There is no rigid rule as to what constitutes the same series of transactions or occurrences for purposes of joinder under Rule 20. In determining whether a particular situation constitutes a transaction or occurrence, a case by case approach is generally pursued." Martinez v. Robinson, 2001 WL 498407, at *5 (S.D.N.Y. May 10, 2001) (internal citations and quotations omitted).

Here, although plaintiff alleges he was denied his right to religious freedom in various ways first at Sing Sing and later at Orleans, the overarching allegation relevant to both his complaint and his motion for a preliminary injunction is that the DOCCS policies do not adequately protect his right to practice his religion, and that the correctional officer defendants have not properly implemented the policies that are in place, in either Sing Sing or Orleans. Accordingly, the Court is satisfied the allegations against defendants arise out of the same series

---

[1] Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

of transactions or occurrences and involve questions of fact and law common to all defendants. See Martinez v. Robinson, 2001 WL 498407, at *5 (rejecting argument that "alleged beatings involv[ing] different correction officers assigned to different divisions," arose from different transactions or occurrences because plaintiff was not seeking relief "only from the correction officers who participated directly in the alleged beatings").

In addition, defendants urge the Court under 28 U.S.C. Section 1404(a), to transfer the case "[f]or the convenience of parties and witnesses, in the interest of justice."

"[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." Solar v. Annetts, 707 F. Supp. 2d 437, 441 (S.D.N.Y. 2010) (internal quotation and citation omitted).

At this time, it would not be in the interest of justice to transfer the action to another district. The requested preliminary injunction relates to events that are scheduled to take place on October 2-11, 2016. There would be insufficient time for a new judge to become familiar with the case and render a decision on the merits of the preliminary injunction before the motion becomes moot.

Accordingly, the Court declines to sever and transfer the claims brought against the Orleans and DOCCS defendants at this phase of the case.[2]

II.     Motion for Preliminary Injunction

Defendants next argue plaintiff has failed to show he is entitled to the preliminary injunctive relief he seeks.

---

[2]     Defendants may of course move to sever again when they respond to to the amended complaint, and certainly if all claims arising in this district are dismissed, the Court would strongly consider transferring any remaining claims to another district where venue would be proper at that time.

The Court agrees.

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a <u>clear</u> <u>showing</u>, carries the burden of persuasion." <u>Sussman v. Crawford,</u> 488 F.3d 136, 139 (2d Cir. 2007) (internal citation and quotation omitted).

"To secure a preliminary injunction . . . the moving party must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make it a fair ground for litigation, and a balance of hardships tipping decidedly in its favor." <u>MONY Grp., Inc. v. Highfields Capital Mgmt., L.P.</u>, 368 F.3d 138, 143 (2d Cir. 2004) (internal citation and quotation omitted).

"A party moving for a mandatory injunction that alters the status quo by commanding a positive act must . . . make a clear or substantial showing of a likelihood of success on the merits, a standard especially appropriate when a preliminary injunction is sought against government." <u>D.D. ex rel. V.D. v. New York City Bd. of Educ.</u>, 465 F.3d 503, 510 (2d Cir. 2006), <u>opinion amended on denial of reh'g,</u> 480 F.3d 138 (2d Cir. 2007) (internal citations and quotations omitted). Plaintiff here must meet this higher standard because he is seeking to have DOCCS change its policy regarding joint Sunni and Shiite observances during Muharram/Ashura.

Although the Court finds (assuming the truth of the allegations in the preliminary injunction motion) that plaintiff has satisfied his burden on the irreparable harm prong, he has failed to make a clear or substantial showing of a likelihood of success on the merits.[3]

---

[3] Even if the lesser standard of "sufficiently serious questions going to the merits" applied, the Court finds plaintiff has failed to make that showing for the same reasons set forth below, namely, that defendants have established to the Court's satisfaction that the policies at issue were put in place in furtherance of compelling governmental interests with the least restrictive means available.

A. <u>Irreparable Harm</u>

"To satisfy the irreparable harm requirement, [plaintiff] must demonstrate that absent a preliminary injunction [he] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." <u>Freedom Holdings, Inc. v. Spitzer</u>, 408 F.3d 112, 114 (2d Cir. 2005) (internal citation and quotations omitted).

Here, the crux of plaintiff's proposed preliminary injunction seeks to enjoin defendants from "forcing the plaintiff to perform the last two days of Muharram/Ashura with the Sunni Muslim community." (Prelim. Inj. Motion at 1). He alleges he "would be committing a sin" if he participated in the Sunni-led services taking place this month. (Pl.'s Reply at 3).

Assuming the truth of these allegations solely for the purpose of deciding this motion, the Court finds plaintiff has sufficiently shown he will suffer an actual and imminent injury if the preliminary injunction is not granted, and therefore he has satisfied the irreparable harm prong of the analysis.

B. <u>Likelihood of Success on the Merits</u>

A finding of irreparable harm does not end the analysis, however. As mentioned, plaintiff must also make a clear or substantial showing of a likelihood of success on the merits of his claim.

The Court finds plaintiff has not met his burden here.

Plaintiff brings claims under RLUIPA, the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment.

The Court addresses the RLUIPA and constitutional claims in turn.[4]

1. RLUIPA

"Under RLUIPA, a plaintiff must demonstrate that the state has imposed a substantial burden on the exercise of his religion; however, the state may overcome a RLUIPA claim by demonstrating that the challenged policy or action furthered a compelling governmental interest and was the least restrictive means of furthering that interest." Redd v. Wright, 597 F.3d 532, 536 (2d Cir. 2010); see also Holt v. Hobbs, 135 S. Ct. 853, 862 (2015).

"RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . . not whether the RLUIPA claimant is able to engage in other forms of religious exercise." Holt v. Hobbs, 135 S. Ct. at 862.

"RLUIPA requires us to scrutinize the asserted harm of granting specific exemptions to particular religious claimants and to look to the marginal interest in enforcing the challenged government action in that particular context." Id. at 863 (internal quotations and citation omitted).

Here, plaintiff alleges he "would be committing a sin" if he is not permitted to participate in Muharram/Ashura separately from Sunni Muslims. (Pl.'s Reply at 3). The Court accepts plaintiff's religious beliefs to be sincerely held, and accepts for the purposes of this motion that

---

[4] Defendants also argue plaintiff is not likely to succeed on the merits of his claims because he has failed to exhaust his administrative remedies. (Defs.' Br. at 20). Plaintiff submitted with his reply papers what appears to be a fully exhausted complaint, culminating in a decision by the Inmate Grievance Program Central Office Review Committee, "uphold[ing] the determination of the Superintendent" and asserting "[t]he last days of Ashura are listed as Islam and are not limited only to Shi'ites," and "no compelling reason has been presented to allow the Shi'ite inmates a separate place to worship." (Pl.'s Reply at Ex. 9). The Court need not make a final determination on the issue of exhaustion at this time, however, because it finds plaintiff is not likely to succeed on the merits for the reasons stated herein.

the burdens placed on him with respect to the observance of Muharram/Ashura with Sunni Muslims are substantial.

However, defendants have established the policies in question were put in place in furtherance of compelling governmental interests.

First, defendants have submitted a copy of the official DOCCS Holy Day calendar and the 2001 "protocol for Shiite Muslim Programs and Practices," the development of which took more than two years of consideration and outreach to "major Islamic organizations in New York State in order to determine the appropriate direction in matters of Islamic doctrine, tradition and ritual." (Morris Dec'l ¶¶ 33-34). The Holy Day calendar provides that the "first nine days" of the "Days of Ashura (Muharram)" are "traditionally celebrated by Shi'ite Muslims," and the "Last Two Days of Ashura" "are celebrated by all Islamic adherents." (Morris Dec'l Ex. B at 15). Neither entry states that Sunni and Shiite Muslims are to be provided with separate spaces for participation in these events.

Moreover, defendants submit that DOCCS's policies serve to "maintain[] safety and security, avoid[] conflict among inmates by separating them into groups, [and] avoid[] the administrative costs of organizing and holding separate services for Sunni Muslims for a Holy Day reserved primarily for Shi'a inmates"; "foster[] harmony among inmates and avoid[] exacerbating animosities that may exist within groups of religious adherents among those inmates"; and "avoid the administrative burden of reserving additional space, requiring additional security staff, preparing additional food, dispatching additional clean-up crews – essentially avoiding the duplication of effort upsetting the status quo would require." (Defs.' Br. at 21, 23-24).

9

Defendants have also satisfied the Court that DOCCS's policies are the least restrictive means available. In particular, as explained in a declaration by DOCCS's Director of Ministerial, Family and Volunteer Services, DOCCS has established guidelines to permit inmates with individualized beliefs "to practice their religion while recognizing the limitations of the prison setting and resources." (Morris Dec'l ¶ 15). In particular, "[a]ll inmates are allowed to pray and study in their cells and to receive religious publications," they are permitted to "meet individually with any facility chaplain," or if an inmate "feels that a religious program does not fulfill his religious needs, DOCCS . . . allows inmates to receive spiritual advice from the outside religious community when a DOCCS chaplain is not available." (Id. ¶¶ 16-18).

As a result, the Court agrees with defendants that the least restrictive means of accommodating plaintiff's religious beliefs, in light of the compelling governmental interests they advance, is "to allow Sunni inmates to participate with him in observing the last days of Muharram and Ashura." (Defs.' Br. at 25). Rahman v. Goord, 2007 WL 1299408, at *4 (W.D.N.Y. May 3, 2007) (finding a "joint Jumah service" attended by both Sunni and Shiite Muslims was "the least restrictive means of accomplishing" DOCCS's "compelling interest in having a single Jumah service").

2. Constitutional Claims

Much like the RLUIPA analysis, a plaintiff asserting constitutional violations bears the initial burden of showing that the disputed policy substantially burdens his sincerely held religious beliefs. Salahuddin v. Goord, 467 F.3d 263, 274-75 (2d Cir. 2006). The defendants then "bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct," but "the burden remains with the prisoner to show that these articulated concerns were irrational." Id. at 275.

"Under the First Amendment, . . . a generally applicable policy will not be held to violate a plaintiff's right to free exercise of religion if that policy is reasonably related to legitimate penological interests." Id. (internal citation and quotation omitted).

For an equal protection claim, the standard is similar to a First Amendment claim: "the reasonableness of the prison rules and policies must be examined to determine whether distinctions made between religious groups in prison are reasonably related to legitimate penological interests." Benjamin v. Coughlin, 905 F.2d 571, 575 (2d Cir. 1990).

As discussed above, the Court accepts for the purposes of this motion that the policies in question pose a substantial burden on plaintiff's sincerely held religious beliefs.  In addition, the Court assumes for the purposes of this motion that the policies in question recognize the distinction between the Sunni and Shiite religious groups at Sing Sing and Orleans and that holding joint Muharram/Ashura observances is a DOCCS policy put in place despite those distinctions.

However, defendants have met their burden by showing that the restrictions placed on plaintiff's religious freedoms are reasonably related to several legitimate penological interests. For example:

- "DOCCS as a matter of policy attempts to avoid dividing inmates into groups where differences among them are emphasized, as the pronouncement of such differences can lead to divisiveness among inmates, and ultimately could lead to the resentments and rivalries that compromise social harmony that DOCCS tries to maintain in its prison facilities, and could, if extreme, lead to violence.  Thus, DOCCS aims to accommodate groups of co-religionists without exacerbating rivalries by segregating individuals in sub-groups." (Morris Dec'l ¶ 45).

- "Segregating Sunni from Shia for the observances of the 'Days of Ashura (Muharram)' and the 'Last Two Days of Ashura' would require that any facility in which segregation would be ordered would have to find separate and appropriate space for the competing observances, and therefore also have to assign security sufficient for each space.  In addition, the dietary requirements for separate observances would require additional work for kitchen staff." (Id. ¶ 48).

11

- "[The] Religious Holy Day Calendar . . . is a carefully balanced protocol . . . to allow the greatest number of inmates to practice their religion while . . . meeting the security, administrative and financial constraints facing DOCCS.  To deny requests to alter the religious calendar to all inmates assures consistency, while granting any request for some but not others would create the appearance of favoritism, fostering resentment."  (Id. ¶ 54).

Plaintiff alleges in his complaint defendants are "responsible for creating an expectation for the Plaintiff to have separate . . . Islamic religious events from Sunni Muslims" apparently because Shiite Muslims have been permitted to participate in other religious events separate from Sunni Muslims.  (Amend. Compl. ¶¶ 2, 12).  He alleges this proves "no legitimate penological interest exists" in having other religious events be joint between the two groups.  (Id. ¶ 12).  The Court finds this argument unpersuasive in light of the specific and rational penological interests provided by defendants.

In sum, although the Court accepts for purposes of this motion that the policies in question pose a substantial burden on plaintiff's sincerely held religious beliefs, defendants have provided legitimate and rational explanations for why they are justified in not providing separate spaces, food, and staffing for Shiite Muslims for all religious events, including the ones at issue here.  The Court therefore finds plaintiff is not likely to succeed on the merits of his claim.

Accordingly, plaintiff has failed to show he is entitled to the preliminary injunctive relief he seeks.

**CONCLUSION**

Plaintiff's motion for a preliminary injunction is DENIED.

The Clerk is instructed to terminate the motion.  (Doc. #31).

Dated: October 4, 2016
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge