UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
BASHEEN RUSH,
                Plaintiff,
v.
                                            **OPINION AND ORDER**
DR. L. MALIN, ANTHONY ANNUCCI,
CHERYL MORRIS, NOELLE                       15 CV 3103 (VB)
CHEESEBORO, MICHAEL CAPRA, JEFF
MCKOY, T. TRACZ, K. CROWLEY,
HERNANDEZ, IMAM HASAN A. MU'MIN,
                Defendants.
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Basheen Rush, a former inmate at Sing Sing Correctional Facility ("Sing Sing"), currently housed at Orleans Correctional Facility ("Orleans"), who identifies as an adherent of the Shi'a branch of Islam, brings this action pro se and in forma pauperis under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, and 42 U.S.C. § 1983, alleging violations of his First Amendment right to free exercise of his religion and his Fourteenth Amendment right to equal protection.

    Defendants have moved to dismiss under Rule 12(b)(6). (Doc. #62). For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

    The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

    In deciding the pending motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor.[1]

---

[1] These alleged facts are taken from the amended complaint and plaintiff's opposition to the motion to dismiss, and from the documents attached to both.

1

Plaintiff has asserted five fully-exhausted claims arising from incidents that occurred at Sing Sing and Orleans.[2] (See Am. Compl. Exs. 31-35).

First, plaintiff claims he was prevented from participating in a Shi'a Eid ul-Fitr prayer service on July 28, 2014, because an event package was submitted too late for Sing Sing to accommodate the request. According to plaintiff, he submitted the request five days before the event; the relevant rules require that such requests be submitted forty-five days before an event. Because it was late, the request was denied.

Second, plaintiff claims an event package for observance of the Six Days of Shawwal Fast at Sing Sing was originally approved to take place between August 3 and August 8, 2014, but that it was subsequently rescheduled for between August 1 and August 6, 2014. The new dates caused a conflict, however, because a Family Day Event for Eid ul-Fitr was scheduled for August 2. The Family Day Event involved the provision of food and drinks to Muslim inmates and their guests. As a result, plaintiff could not both fast for Shawwal and partake in the food and drinks at the Family Day Event.

Third, plaintiff claims in August 2014, after twenty-seven months of separate Shi'a Jumu'ah Friday Prayer services at Sing Sing, separate Shi'a services were suspended until October 2014, when they were reinstated.

Fourth, plaintiff claims that on October 12, 2014, he was made to miss the observance of the last two days of Ashura at Sing Sing because no separate Shi'a service was permitted.

Fifth, plaintiff claims defendants at Orleans have denied his right to weekly classes, a separate inmate account to collect funds for Shi'a "books and other study items," (Am. Compl.

---

[2] Plaintiff was transferred from Sing Sing to Orleans in January 2015.

Exs. 34 at 3), and denied Shi'a inmates "the ability as a whole to receive donations or raise funds" (referred to elsewhere as a "fundraiser"). (Id. Ex. 35 at 2).

Plaintiff brings these causes of action against ten defendants: (i) Anthony Annucci, Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"); (ii) Jeff McKoy, DOCCS Deputy Commissioner for Program Services; (iii) Cheryl Morris, Director of DOCCS Ministerial, Family and Volunteer Services ("MFVS"); (iv) Fernandez (incorrectly sued as Hernandez), Assistant Director of MFVS; (v) Michael Capra, Superintendent of Sing Sing; (vi) Leslie Malin, Deputy Superintendent of Programs at Sing Sing; (vii) Noelle Cheeseboro, Assistant Deputy Superintendent of Programs at Sing Sing; (viii) Imam Hasan A. Mu'min, Sing Sing Coordinating Chaplain; (ix) K. Crowley, Superintendent of Orleans; and (x) T. Tracz, Deputy Superintendent of Programs at Orleans.

## DISCUSSION

I.  Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the "two-pronged approach" announced by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544,

3

564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Because plaintiff is proceeding pro se, the Court must construe his submissions liberally and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted). Nor may the Court "invent factual allegations [plaintiff] has not pled." Id.

II.   Free Exercise Claims

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."[3] O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (internal citation omitted). To state a free exercise claim, plaintiff "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." Salahuddin v. Goord, 467 F.3d 263, 274-75 (2d Cir. 2006).[4]

---

[3]   The First Amendment's free exercise guarantee applies to state actors through the Fourteenth Amendment. Cantwell v. Connecticut, 310 U.S. 296, 303 (1940).

[4]   In determining whether a plaintiff has made this threshold showing, the Court may not "question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." Ford v. McGinnis, 352 F.3d 582, 597 (2d Cir. 2003) (internal quotation marks omitted). The Court's "scrutiny extends only to whether a claimant sincerely holds a particular belief and whether the belief is religious in nature." Id. at 590 (internal quotation marks omitted); accord Jackson v. Mann, 196 F.3d 316, 321 (2d Cir. 1996) ("Free Exercise protection turns on whether [beliefs] are 'sincerely held,' not on . . .

4

An inmate's "right to practice his religion is, however, not absolute." Salahuddin v. Coughlin, 993 F.2d 306, 308 (2d Cir. 1993). Corrections facilities may restrict religious exercise so long as such restrictions are "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. at 349. Thus, even if plaintiff can establish defendants substantially burdened his right to religious exercise, he cannot state a free exercise claim if defendants can show "the disputed official conduct was motivated by a legitimate penological interest." Salahuddin v. Goord, 467 F.3d at 276; see also Young v. Coughlin, 866 F.2d 567, 570 (2d Cir. 1989); accord Harris v. Lord, 957 F. Supp. 471, 475 (S.D.N.Y. 1997) (denying motion to dismiss because "[d]efendants assert no reason, compelling or otherwise, as to why plaintiff was denied access to attend her religious services").

A. First Claim

Plaintiff has not stated a free exercise claim based on the fact that he was unable to participate in a Shi'a Eid ul-Fitr prayer service on July 28, 2014. As a matter of law, the requirement that an event package be submitted well in advance of the event is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. at 349. Here, the event package was submitted at most five days before the event. Under these circumstances, defendants at Sing Sing reasonably denied the package on the grounds that it was untimely.

B. Second Claim

As to plaintiff's second claim—that defendants at Sing Sing created a conflict making it impossible for plaintiff to participate in the Six Days of Shawwal Fast and also attend the Eid ul-Fitr Family Day Event on August 2, 2014—plaintiff has again failed plausibly to allege a free

---

'ecclesiastical question[s].'").

5

exercise claim. First, it appears from the documents attached to plaintiff's amended complaint that he was permitted to participate both in the Shawwal Fast and the Eid ul-Fitr Family Day Event. (See Am. Compl. Exs. 15 at 13; 16 at 7). Plaintiff has not alleged that Shi'a inmates are required to eat at the Family Day Event, thus breaking the Shawwal Fast. In other words, he has failed to allege his religious freedoms were substantially burdened. Moreover, the change of date was reasonably related to legitimate penological interests because it was based on the published statewide Religious Holy Day calendar.

C. Third Claim

Plaintiff's third claim—that he was prevented from attending Jumu'ah services between August and October 2014—does plausibly state a free exercise claim. "It is well established that prisoners have a constitutional right to participate in congregate religious services." Salahuddin v. Coughlin, 993 F.2d at 308. Denying an inmate congregate religious services over a prolonged period "substantially burdens" that right. See Salahuddin v. Goord, 467 F.3d at 277. Thus, the allegation that plaintiff was prevented from participating in religious services for two months plausibly constitutes a substantial burden on plaintiff's rights. Defendants fail to assert a compelling reason for this burden. Therefore, the Court declines to dismiss this claim at this stage. Harris v. Lord, 957 F. Supp. at 475.

D. Fourth Claim

Plaintiff's fourth claim—that Shi'a inmates at Orleans have been required to participate in the observance of the last two days of Ashura with Sunni inmates—also states a free exercise claim. Defendants argue plaintiff was permitted to attend the services, suggesting that his religious beliefs were not substantially burdened. However, plaintiff alleges if he had attended the Ashura event, he would have been "forced to conform to the Sunni Muslims practices and

6

belief," (Am. Compl. Ex. 35 at 4), and as a result, plaintiff "miss[e]d the very last two days of prayer and the most important tenet of his belief and practices." (Am. Compl. ¶ 54(c)).

As a result, at this stage, plaintiff has plausibly alleged his religious beliefs were substantially burdened, and defendants have provided no compelling reason for that burden.[5]

E. Fifth Claim

Defendants have made no arguments in their briefs for why the Court should dismiss plaintiff's fifth claim, that defendants at Orleans denied plaintiff's right to weekly classes, a separate inmate account, and a separate fundraiser for Shi'a inmates. (Am. Compl. ¶¶ 9-10, 17). The Court will therefore permit this claim to go forward.

III. Equal Protection Claim

Defendants argue plaintiff has failed to state an equal protection claim because (i) no similarly situated group is treated more favorably than plaintiff, and (ii) DOCCS's policies withstand rational basis review.

The Court disagrees.

The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To state a claim under the Equal Protection Clause, a plaintiff must allege (i) "compared with others similarly situated, [he] was selectively treated; and (ii) that such

---

[5] The Court acknowledges that in its October 4, 2016, decision denying plaintiff's motion for a preliminary injunction, which dealt with the issue of separate Sunni and Shi'a Ashura observances, the Court relied on several legitimate penological interests in keeping the two groups separate when it denied plaintiff's motion. (Doc. #54). However, plaintiff's burden with respect to a preliminary injunction motion—requiring a "clear showing" of a "likelihood of success on the merits," among other elements, Sussman v. Crawford, 488 F.3d 136, 139 (2d Cir. 2007); MONY Grp., Inc. v. Highfields Capital Mgmt., L.P., 386 F.3d 138, 143 (2d Cir. 2004)—is significantly higher than that of "plausible" allegations applied on a motion to dismiss under Rule 12(b)(6).

selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980). If a prisoner claims he received different treatment by prison officials because of a protected characteristic, he must "demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005).

Here, plaintiff alleges DOCCS permits adherents of different denominations of Christianity separate accounts, classes, prayer services, and family events, whereas Shi'a inmates are not given the same treatment and are instead "force[d] . . . to conform to the Sunni Muslims understanding of Islam." (Am. Compl. Ex. 35 at 3). Plaintiff also alleges defendants employed a "selective approach to providing Jumu'ah to all other Islamic groups (Sunni & [Nation of Islam ("N.O.I.")] [which] shows a prevailing act of discrimination." (Am. Compl. Ex. 33 at 5). In addition, plaintiff alleges "defendant Malin has approved fundraiser for the N.O.I., Sunni Muslims, Rastafarian, Roman Catholic, catholic, Gods & Earths Nation and occ accounts for other religious groups [but] denied the Ithna-Asheri Shi'a Islam and the [p]laintiff" the same privilege. (Am. Compl. ¶¶ 17; 54(a)).

Moreover, although defendants state they have reasons—grounded in "administrative logistics, space, timing, security, [and] finances"—for providing a "generic" services to all Muslim inmates, whether Shi'a or Sunni, the Court is unable to conclude as a matter of law on a motion to dismiss that defendants' explanations are sufficient to satisfy a rational basis review. (Defs.' Br. at 19).

The Court therefore concludes plaintiff has plausibly alleged an equal protection claim.

IV.  RLUIPA Claim

Defendants argue plaintiff's claims for monetary relief under RLUIPA should be dismissed. They also argue plaintiff has failed to state a claim for injunctive relief under RLUIPA.

The Court agrees any monetary claims under RLUIPA must be dismissed, but disagrees with respect to plaintiff's injunctive relief claims.

"RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities." Holland v. Goord, 758 F.3d 215, 224 (2d Cir. 2014) (citing Washington v. Gonyea, 731 F.3d 143, 145-46 (2d Cir. 2013) (per curiam)). Instead, a plaintiff may only seek injunctive or declaratory relief under RLUIPA. See Holland v. Goord, 758 F.3d at 224. Moreover, "[a]bsent any request for prospective relief to remedy ongoing violations of federal law, a declaration that the defendants violated the plaintiff's constitutional rights in the past is barred by the Eleventh Amendment." Hill v. Chapdelaine, 2017 WL 62511, at *2 (D. Conn. Jan. 5, 2017) (citing Green v. Mansour, 474 U.S. 64, 71-73 (1985)).[6]

Accordingly, to the extent plaintiff seeks monetary relief under RLUIPA, those claims are dismissed.

"Under RLUIPA, a plaintiff must demonstrate that the state has imposed a substantial burden on the exercise of his religion; however, the state may overcome a RLUIPA claim by demonstrating that the challenged policy or action furthered a compelling governmental interest and was the least restrictive means of furthering that interest." Redd v. Wright, 597 F.3d 532, 536 (2d Cir. 2010); see also Holt v. Hobbs, 135 S. Ct. 853, 862 (2015). "RLUIPA's 'substantial

---

[6]  Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

burden' inquiry asks whether the government has substantially burdened religious exercise . . . not whether the RLUIPA claimant is able to engage in other forms of religious exercise." Holt v. Hobbs, 135 S. Ct. at 862.

As explained above, and contrary to defendants' contention, plaintiff has plausibly alleged a substantial burden on his religious exercise when Shi'a inmates were (i) denied Jumu'ah services for two months, (ii) denied a separate Ashura observance, and (iii) denied weekly classes, a separate account, and a fundraiser. Defendants for their part have failed to show—at this stage—that these policies furthered a compelling governmental interest or that there were no less restrictive means for furthering any such interest.

Accordingly, the Court will permit plaintiff's claims for injunctive relief under RLUIPA—limited to these three claims that survive the instant motion—to proceed at this stage.

V.      Personal Involvement

Defendants argue plaintiff has failed to allege defendants Capra, McKoy, Tracz, Crowley, Fernandez, Cheeseboro, Malin, and Mu'min were personally involved in any of the alleged constitutional violations. They argue "[d]efendants Morris and Annucci are the only [d]efendants implicated in formulating and enforcing the policy about which plaintiff complains." (Defs.' Br. at 18).

The Court agrees except with respect to defendants Malin, McKoy, and Fernandez.

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983." Wright v. Smith, 21 F.3d 496, 501 (2d. Cir. 1994) (citing Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). "Supervisor liability under § 1983 'can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after

10

being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.'" Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003) (quoting Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003)).

Here, plaintiff has alleged Malin (i) denied plaintiff's request for weekly classes, a separate account, and a fundraiser for Shi'a inmates, and directed him and other Shi'a inmates to use the Sunni account and fundraiser instead (see Am. Compl. ¶ 18, Ex. 9); (ii) was involved in the decision to stop permitting separate Shi'a Jumu'ah services (see id. ¶ 33); and (iii) was involved in the denial of separate Ashura observances (see id. ¶ 36). Plaintiff alleges McKoy "knowingly denied the plaintiff weekly Jumu'ah services." (Id. ¶57; Ex. 23 at 3). Moreover, documents attached to the amended complaint show McKoy was involved in the discussions regarding allowing Shi'a inmates to have their own account at Orleans. (Id. Ex. 26 at 4). Finally, plaintiff alleges Fernandez instructed another defendant to close a Shi'a account, because both Shi'a and Sunni "groups go[] to Mecca to pray[]." (Id. ¶ 54(b)).

However, the allegations made against Capra, Crowley, Cheeseboro, Mu'min, and Tracz are purely conclusory and fail plausibly to suggest they were personally involved in the relevant acts here. Therefore, these defendants are dismissed. Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

VI. Qualified Immunity

Defendants argue they are entitled to qualified immunity on plaintiff's first, second, and third claims. Because the Court dismisses plaintiff's first and second claims, it need not reach

11

the question of qualified immunity on those claims. With respect to plaintiff's third claim, the Court declines to dismiss the claim on qualified immunity grounds at this time.

Qualified immunity shields government officials from damages suits "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A qualified immunity defense is established if "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998).

After discovery, and based on a more complete record, the Court may well decide it was objectively reasonable under all the relevant circumstances for defendants to believe that denying plaintiff congregate religious services for two months did not violate his right to free exercise of religion. Accordingly, the Court will defer until then the question of whether defendants are entitled to qualified immunity.

## CONCLUSION

The motion to dismiss is GRANTED as to plaintiff's first, second, and fifth claims, as well as to his monetary claims under RLUIPA.

The motion to dismiss is DENIED in all other respects.

By separate order, the Court will schedule an initial conference.

The Clerk is instructed to terminate the motion (Doc. #62), and terminate defendants Capra, Crowley, Cheeseboro, Mu'min, and Tracz.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v United States, 369 U.S. 438, 444-45 (1962).

Dated: June 29, 2017
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge